## WILL NEWMAN v. THE STATE.

### No. 4440.    Decided February 10, 1909.

**1.—Burglary—Indictment.**

Where the allegation of breaking is general, without specifying night or daytime, the indictment sufficiently charges either a daytime or a night-time burglary.

**2.—Same—Insufficiency of the Evidence.**

Where the evidence showed that the car was not broken at the time it was claimed the defendant burglariously entered it, or could have done so, and there was no corroboration of the testimony of the two accomplices connecting defendant in any way with the transaction or with possession of any of the alleged stolen property, the State's case was not made out.

**3.—Same—Charge of Court—Breaking.**

It is not sufficient that all entries into a house or railroad car are burglarious if done without the free consent of the owner; there must be a breaking, whether the entry be by day or night; and a charge of the court which left the impression that whether defendant entered an open car or broke it would make no difference, was reversible error; the evidence being only inferential that defendant and another broke the car. Following Bates v. State, 50 Texas Crim. Rep., 568.

**4.—Same—Charge of Court—Theft.**

Where the indictment charged that the car was entered burglariously for the purpose of committing the crime of theft, it was error in the court's charge to say that if defendant broke the car with intent to commit a felony or the crime of theft he would be guilty.

**5.—Same—Charge of Court—Accomplice—Corroboration.**

Upon trial for burglary, a charge of the court on accomplice testimony which instructed the jury that if such testimony tended to show defendant's guilt, etc., was reversible error. The accomplice's testimony must not only tend to connect the defendant with the offense, but it must do so.

Appeal from the District Court of Tarrant. Tried below before the Hon. W. T. Simmons.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Randell & Randell,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was charged with burglary, in that he by force, threats and fraud broke and entered a railroad car.

The allegation of breaking is general, without specifying night or day time. Under the authorities this sufficiently charges either a daytime or night-time burglary, so far as this allegation is concerned. Except by the testimony of Clarence Pace and Mrs. Stanley there is no evidence to connect appellant with the breaking of the car or its entry. Their evidence shows beyond dispute, as we understand the force and effect of their testimony, that they were accomplices. Quite a lot of the property taken from the car was found at Mrs. Stanley's residence. Clarence Pace, the son of Mrs. Stanley, testified that he went with appellant and Waggoner to the car; that he stood outside of the car, and where he could not see the parties, but they threw some shoes from the car while he was standing there. That he went away. He was living with his mother, and is a minor about seventeen years of age. Mrs. Stanley wore a pair of shoes that came from the car, as did Clarence Pace. Outside of their testimony there is nothing to indicate that appellant had any connection with the burglary at all, and from the testimony of Pace, it is not shown that Waggoner and appellant broke the car, though the circumstances tend to indicate that the seal which fastened the door of the car was broken, and in fact it may be stated, that it was broken by somebody, between the fourteenth and nineteenth of the month. The car was loaded on the 15th of February, and the alleged owner, Littlefair, states that the point of delivery of this car was at North Fort Worth, to the Fort Worth and Denver Railway, to be delivered on the morning of the 14th, but on account of the congestion of the yards, so many cars, etc., they could not make the delivery, and the car was brought back to Holloway's siding, just north of the Arlington Heights road. On the 19th of February, this witness says the car was picked up and again taken to North Fort Worth to be delivered. At this time they found the car door open and quite a lot of the goods and merchandise gone. He says this car was loaded on the 13th of February, and left their yard to go to the Denver track at eleven o'clock on the fourteenth. It was then hauled to North Fort Worth and stayed there three or four hours, before it was carried to Holloway's switch. It was taken there in the afternoon of the 14th of February. The witnesses show that it was sealed at that time. Outside of the testimony of the witness Pace, no attempt was made to show at what time the car was broken. The car, if Pace's testimony is correct, was broken at night of February 14. The seal was intact on February 14. when the car was brought from North Fort Worth and placed on the Holloway's switch, as shown by the testimony of the car inspector of the Frisco Railway System. The Frisco Railway is the company that had it in charge until the nineteenth of the month. Pace places the breaking or entry of the car at night. Appellant left Fort Worth and

moved to Sherman on the morning of the 14th of February, reaching that point between one and two o'clock on the fourteenth in the daytime, and his whereabouts, movements, acts and business matters were fully and clearly shown by various business people of that town on that and succeeding days. Under this evidence he was not in Fort Worth after the morning of the 14th of February. Then for two reasons, under the facts, the State has not made a case. First, the car was not broken on the night of the thirteenth, the only night appellant spent in Fort Worth after the loading of the car, because the railroad employes show positively that the car had not been broken on the fourteenth. And, second, that there is no corroboration of the two accomplices, Stanley and Pace. If the testimony of these accomplices is eliminated from this record, there is absolutely not a word of evidence connecting appellant in any way with the transaction or with possession of any of the property; and it is further clear that if he took the goods or assisted in taking any of the goods from the car, he was never found in possession of any of the property except by the testimony of these two parties. They were found in possession of and using them, and much of the property was found at the residence of Mrs. Stanley, where her son Clarence Pace domiciled. The State did not undertake to show beyond this testimony that appellant ever had any connection with the transaction, or that he ever had any of the goods. We are, therefore, of opinion the State has not made out a case. The accomplices are not corroborated.

The court charged the jury as follows: "By the term 'entry' into a house is meant every kind of entry but one made by free consent of the occupant or of one authorized to give such consent. It is not necessary that there should be any actual breaking to constitute burglary." The general definition of burglary given by the charge is with reference to breaking a house at night by force, threats and fraud; or in like manner by entering it at any time either day or night and remaining concealed therein with the intent in either case of committing a felony or the crime of theft. Then follows the general definition of theft. Applying the law to the facts, the court instructed the jury that if they should believe beyond a reasonable doubt that defendant on or about the 19th day of February, in the county of Tarrant, and State of Texas, by force did enter a railroad car, the property of George L. Littlefair, as charged in the indictment, with the intent to commit a felony or the crime of theft, they would find him guilty of the crime of burglary. These are the charges of the court with reference to the definition of breaking, entry, etc. Exception was reserved to the definition of entry given by the court. We think this was well taken. It is not sufficient that all entries into a house or railroad car are burglarious if done without the free consent of the owner. There must be a breaking. If in the daytime, an actual breaking; if at night, it must be done by force; threats or fraud not being here discussed. As the charge is given, the entry being

shown at night by the accomplice, the court has practically instructed the jury that if the car was entered without the free consent of the owner appellant would be guilty, it not being necessary to show an actual breaking at night. Whether the entry be day or night, there must be a breaking. It may be such as lifting the latch or opening the door, but there must be a breaking, and if in the daytime, as before stated, the breaking must be an actual breaking applied to the building. The evidence by the accomplice does not show except very inferentially that appellant and Waggoner broke the car, if in fact they did break it; he did not see it done; was not so situated that he could see it. He states that the goods were taken out of the door at the end of the car, and that the parties got up between the cars and threw the shoes out from the end of the car, the cars being fastened together. See Bates v. State, 50 Texas Crim Rep., 568. We are of opinion, therefore, that this charge does not present the question of entry as contemplated by the definition of that term in the statute, and left the impression upon the jury that under the testimony of the accomplice, whether appellant entered an open car or broke it would make no difference, that in either event he would be guilty of burglary.

We wish to call attention again to other phases of this charge so that the courts in instructing the jury in regard to cases of this character may be more guarded and so frame their charges as to avoid reversals. The court charged the jury that if appellant broke the car with intent to commit a felony, or the crime of theft, he would be guilty. The allegation in the indictment is, that the car was entered for the purpose of committing the crime of theft. There is no other offense charged or sought to be charged, and yet the court authorized a conviction for any felony.

Again, with reference to accomplice testimony, the jury were instructed they could not find appellant guilty upon the testimony of an accomplice unless they should believe the testimony of Clarence Pace and Mrs. Stanley to be true, and that it shows or *tends* to show that the defendant is guilty as charged in the indictment; and they could not convict unless they should further believe that there is other evidence in the case, outside of the testimony of Pace and Stanley *tending* to connect the defendant with the commission of the offense charged in the indictment. This form of charge has been frequently condemned as laying down a false rule and criterion. Under this charge appellant could be convicted if the testimony of the accomplices *tended* to connect defendant with it, and there was other testimony *tending* to corroborate. This is not in accordance with the law of this State. The accomplice testimony must not only *tend* to connect the defendant with the offense, but it must do so. Two *tendencies,* one by the accomplice and the other by corroboration, are not sufficient where accomplice testimony is introduced. The last two questions discussed were not urged for reversal. We call atten-

tion to them, however, in reversing the judgment so that such errors may not be committed upon the trial of other cases.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*